Filed 1/13/14

**CERTIFIED FOR PUBLICATION**

IN THE SUPERIOR COURT OF CALIFORNIA

COUNTY OF ORANGE

APPELLATE DIVISION


HUNTINGTON CONTINENTAL
TOWN HOUSE ASSOCIATION,
INC.

     Plaintiff and Respondent,

          v.

THE JM TRUST, etc. et al.,


     Defendants and Appellants.

Case No. 2013-00623099

Trial Court: 2011-00466754


OPINION


Appeal from a judgment of the Orange County Superior Court, West Justice Center, Robert H. Gallivan, Judge. (Retired Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)   Reversed and remanded.


Sam Walker, Esq. for Defendants and Appellants.

Feldsott & Lee, Jacqueline Pagano and Martin L. Lee for Plaintiff and Respondent.


1

This case presents an issue on which this court has found little published authority: whether a homeowner's association must accept and apply partial payments that reduce delinquent assessments owed but not any other amounts due, such as late fees, interest, and attorney's fees and costs. We conclude the Davis-Stirling Common Interest Development Act (the Act) compels a homeowner's association to do so.

FACTS AND PROCEEDINGS BELOW

Defendants and Appellants The JM Trust, dated January 1, 2005, Joseph A. Miner, trustee, and Joseph A. Miner, individually (collectively, Appellants) own residential real property in a development subject to assessments issued by their homeowner's association, Huntington Continental Town House Association (the Association). From 2003 to the beginning of 2009, appellants timely paid the homeowner's association assessments nearly every month. But Appellants failed to pay the assessment due on April 1, 2009, commencing a long string of delinquencies. On October 13, 2010, the Association sent a letter to Appellants notifying them their assessments were delinquent in the amount of $3,864.96. Receiving no response to the letter, the Association recorded a lien for the delinquent assessments against Appellants' property.

Two weeks later, the Association's Board of Directors passed a resolution authorizing a lawsuit to foreclose on the delinquent assessment lien. The Association's collection attorneys, Feldsott & Lee (Feldsott) followed up with a letter to Appellants on March 11, 2011, notifying them of the Association's intention to institute foreclosure proceedings. The complaint in the present matter was filed on April 13, 2011, seeking foreclosure of the assessment lien and damages for account stated and open book account.

Shortly thereafter, Appellants requested and received from Feldsott an itemized statement of the sums due for delinquent assessments and other fees. In May 2011, Appellants sent a proposed payment plan and a $2,000 check to the Association, along with a request the Association refrain from foreclosing. The Association accepted the $2,000 check, and Feldsott formalized the proposed payment plan. Appellants, however, never signed the proposed plan. Appellants thereafter made two payments to the Association over the summer, totaling $1,500.

On October 17, 2011, Feldsott notified Appellants they failed to make the September and October payments scheduled in the payment plan, and that their failure to make those payments within 10 days would lead to cancellation of the plan. Appellants responded by requesting a line-item accounting.

On November 15, and December 12, 2011, Appellants tendered their regular monthly assessments of $188. Feldsott returned Appellants' checks because Feldsott was "unable to accept partial payments." On December 19, 2011, Feldsott provided Appellants a breakdown of delinquent assessments and fees.

Shortly thereafter, Appellants tendered a $3,500 cashier's check to the Association. On January 3, 2012, the Association's President told Appellants he would have Feldsott apply the $3,500 payment and provide Appellants with an updated accounting. Feldsott provided the accounting on January 5, 2012. At the end of January, however, Feldsott returned Appellant's $3,500 cashier's check, again asserting they were "unable to accept partial payments." Feldsott followed up with a new accounting on February 15, 2012.

After a bench trial, the court awarded the Association foreclosure and damages of $5,715.93 against appellants, and entered judgment. Appellants timely filed a notice of appeal.

# DISCUSSION

Appellants contend the trial court erred in awarding judicial foreclosure and that substantial evidence did not support the damages award. We agree.

### *The Association Was Not Entitled to Judicial Foreclosure of the Assessment Lien*

While the lawsuit was pending, Appellants tendered partial payments of all the assessments due, but some of those partial payments were rejected. Had the Association accepted Appellants' tender of $3,500 in December 2011, Appellants' assessment arrearages would have been brought current[1] and stopped the clock on the 12-month window for foreclosure (Civ. Code, § 1367.4, subd. (c)), although other amounts due would have remained unpaid.

The trial court erred in ruling the Association was entitled to reject the tendered amounts. There is nothing in the Act precluding the acceptance of partial payments of delinquent assessments once litigation has been commenced. Civil Code section 1367.1 provides a comprehensive framework detailing how homeowner's associations may secure delinquent assessments and related fees by way of lien against the homeowner's separate interest in the property. Subdivision (b) allows for partial payments and delineates to what debts, and in which order, payments are to be applied. The plain language of subdivision (b) contemplates partial payments of amounts owed. There would be no need to explain how payments are to be applied to the various charges if the Legislature contemplated only full payments.

---

[1] Although no party provided an accounting of assessments only, this court prepared one to assist it based upon the record of payments and billings found within Plaintiff's Trial Exhibit 21 and Defendants' Exhibits D, E, F, G, H, and K. That chart is attached to this opinion as Appendix A (see chart, post).

4

Although this subsection falls within a statute primarily describing pre-lien procedures, there is nothing that limits the provision to the pre-lien context. Moreover, the Legislature determined that Civil Code section 1367.1 "is subordinate to, and shall be interpreted in conformity with, Section 1367.4." (Civ. Code, § 1367.1, subd. (n).) Section 1367.4 discusses procedures for foreclosing on assessment liens and sets limitations for when foreclosure is a permissible remedy. In adding section 1367.4, the Legislature intended to protect homeowners from being foreclosed upon for small sums of delinquent assessments. (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 137 (2005-2006 Reg. Sess.) April 4, 2005, p. 1.) Allowing partial payments to pay down delinquent assessments after lien recordation would be consistent with the Legislature's desire to limit the remedy of foreclosure to those circumstances where it appears to be the only viable option for collecting delinquent assessments. Here, the threat of foreclosure brought about compliance, except that the Association refused to accept and apply Appellants' tendered payments. Because the Association was not entitled to judicial foreclosure of the assessment lien, we reverse as to the Third Cause of Action.

### *Substantial Evidence Does Not Support the Damages Award*

In its post-trial brief, the Association conceded it had failed to apply a $500 payment that Feldsott accepted. Although the Association deducted the $500 payment from the total damages sought at trial, it did not adjust its interest accrued calculations for the unapplied payment, causing the damages awarded to be excessive and not supported by the evidence. We reverse and remand as to the First and Second Causes of Action for the trial court to determine damages consistent with this decision.

## DISPOSITION

The trial court's judgment is reversed as to the Third Cause of Action, and reversed and remanded as to the First and Second Causes of Action for the trial court to determine damages consistent with this decision.

_____
Griffin, P.J.

We concur:


_____
Servino, J.


_____
Wilson, J.

# APPENDIX A

## (Assessments Only)[2]

| Bill Date | Monthly Assessment Due | Subtotal (current + prior assessments due) | Payments | Total Due |
|---|---|---|---|---|
| 4/1/08 | $188 | $188 | $0[3] | $188 |
| 5/1/08 | $188 | $376 | $188 | $188 |
| 6/1/08 | $188 | $376 | $188 | $188 |
| 7/1/08 | $188 | $376 | $188 | $188 |
| 8/1/08 | $188 | $376 | $376 | $0 |
| 9/1/08 | $188 | $188 | $188 | $0 |
| 10/1/08 | $188 | $188 | $188 | $0 |
| 11/1/08 | $188 | $188 | $188 | $0 |
| 12/1/08 | $188 | $188 | $0 | $188 |
| 1/1/09 | $188 | $376 | $188 | $188 |
| 2/1/09 | $188 | $376 | $0 | $376 |

---

[2] Information taken from Plaintiff's Trial Exhibit 21, and Defendants' Exhibits D, E, F, G, H, and K.

[3] Appellants sent in a payment, but the check was returned for insufficient funds.

| | | | |
|---|---|---|---|
| 3/1/09 | $188 | $564 | $564 | $0 |
| 4/1/09 | $188 | $188 | $0 | $188 |
| 5/1/09 | $188 | $376 | $0 | $376 |
| 6/1/09 | $188 | $564 | $0 | $564 |
| 7/1/09 | $188 | $752 | $0 | $752 |
| 8/1/09 | $188 | $940 | $0 | $940 |
| 9/1/09 | $188 | $1128 | $0 | $1128 |
| 10/1/09 | $188 | $1316 | $0 | $1316 |
| 11/1/09 | $188 | $1504 | $0 | $1504 |
| 12/1/09 | $188 | $1692 | $0 | $1692 |
| 1/1/10 | $188 | $1880 | $0 | $1880 |
| 2/1/10 | $188 | $2068 | $0 | $2068 |
| 3/1/10 | $188 | $2256 | $0 | $2256 |
| 4/1/10 | $188 | $2444 | $0 | $2444 |
| 5/1/10 | $188 | $2632 | $0 | $2632 |
| 6/1/10 | $188 | $2820 | $0 | $2820 |
| 7/1/10 | $188 | $3008 | $0 | $3008 |
| 8/1/10 | $188 | $3196 | $0 | $3196 |
| 9/1/10 | $188 | $3384 | $0 | $3384 |

| | | | | |
|---|---|---|---|---|
| 10/1/10 | $188 | $3572 | $0 | $3572 |
| 11/1/10 | $188 | $3760 | $0 | $3760 |
| 12/1/10 | $188 | $3948 | $0 | $3948 |
| 1/1/11 | $188 | $4136 | $0 | $4136 |
| 2/1/11 | $188 | $4324 | $0 | $4324 |
| 3/1/11 | $188 | $4512 | $0 | $4512 |
| 4/1/11 | $188 | $4700 | $0 | $4700[4] |
| 5/1/11 | $188 | $4888 | $2000 | $2888 |
| 6/1/11 | $188 | $3076 | $1000 | $2076 |
| 7/1/11 | $188 | $2264 | $500 | $1764 |
| 8/1/11 | $188 | $1952 | $0 | $1952 |
| 9/1/11 | $188 | $2140 | $0 | $2140 |
| 10/1/11 | $188 | $2328 | $0 | $2328 |
| 11/1/11 | $188 | $2516 | $0[5] | $2516 |
| 12/1/11 | $188 | $2704 | $0[6] | $2704 |
| 1/1/12 | $193 | $2897 | $0 | $2897 |
| 2/1/12 | $193 | $3090 | $0 | $3090 |

[4] Lawsuit filed April 13, 2011.

[5] Appellants tried to make a $188 payment this month.

[6] Appellants tried to make a $188 payment this month, as well as submit a $3,500 cashier's check, which would have fully paid off the back-due assessments.

| | | | | |
|---|---|---|---|---|
| 3/1/12 | $193 | $3283 | $0 | $3283 |
| 4/1/12 | $193 | $3476 | $0 | $3476 |
| 5/1/12 | $193 | $3669 | $0 | $3669 |
| 6/1/12 | $193 | $3862 | $0 | $3862 |
| 7/1/12 | $193 | $4055 | $0 | $4055 |
| 8/1/12 | $193 | $4248 | $0 | $4248 |
| 9/1/12 | $193 | $4441 | $0 | $4441 |