Filed 10/14/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

HUNTINGTON CONTINENTAL
TOWNHOUSE ASSOCIATION, INC.,

    Plaintiff and Respondent,

      v.

JOSEPH A. MINER, Individually and as
Trustee, etc.,

    Defendant and Appellant.

G049624

(Super. Ct. No. 30-2011-00466754)

O P I N I O N

          Appeal from a judgment of the Superior Court of Orange County, Robert H. Gallivan, Judge. (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Reversed and remanded.

          Sam Walker for Defendant and Appellant.

          Barbara Jones for AARP as Amicus Curiae on behalf of Defendant and Appellant.

          Noah Zinner for Housing and Economic Rights Advocates as Amicus Curiae on behalf of Defendant and Appellant.

Kent Qian for National Housing Law Project as Amicus Curiae on behalf of Defendant and Appellant.

Feldsott & Lee, Stanley Feldsott and Jacqueline Pagano for Plaintiff and Respondent.

Law Offices of Tom Fier and Tom Fier as Amicus Curiae on behalf of Plaintiff and Respondent.

Larry Rothman & Associates and Larry Rothman as Amicus Curiae on behalf of Plaintiff and Respondent.

SwedelsonGottlieb and Joan Lewis-Heard for ALS Lien Services as Amicus Curiae on behalf of Plaintiff and Respondent.

\*       \*       \*

## INTRODUCTION

The Orange County Superior Court, after a decision by the appellate division (*Huntington Continental Town House Assn., Inc. v. Miner* (2014) 222 Cal.App.4th Supp. 13 (*Huntington Continental*)), certified this case for transfer to this court pursuant to rule 8.1005(a)(1) of the California Rules of Court to address a single question. The question is whether a homeowners association is required by the Davis-Stirling Common Interest Development Act (Civ. Code, § 4000 et seq.) (the Davis-Stirling Act) to accept partial payments from an owner of a separate interest, who is delinquent in paying his or her assessments, after a lien has been recorded against the owner's separate interest to secure payment of delinquent assessments and other charges. We ordered the case transferred to this court for hearing and decision.

We agree with the decision of the appellate division of the superior court in *Huntington Continental*, and hold that under Civil Code section 5655, subdivision (a) (section 5655(a)), a homeowners association (an association) must accept a partial payment made by an owner of a separate interest in a common interest development and must apply that payment in the order prescribed by statute. The obligation to accept

2

partial payments continues after a lien has been recorded against an owner's separate interest for collection of delinquent assessments. The remedies available to an association under Civil Code section 5720 depend upon the amount and the age of the balance of delinquent assessments following application of the partial payment.

### FACTS AND PROCEDURAL HISTORY

Joseph A. Miner, as trustee of The JM Trust, Dated January 1, 2005 (the Trust), owns a separate interest in a common interest development subject to the management of the Huntington Continental Townhouse Association, Inc. (HCTA), which is an association within the meaning of Civil Code section 4080.[1] HCTA charges owners of separate interests regular assessments, which are due on the first day of each month.

For nearly every month from 2003 to the beginning of 2009, Miner timely paid HCTA assessments for the Trust's separate interest. He failed to pay the assessment due on April 1, 2009, and, thereafter, the Trust was delinquent in paying assessments. On October 13, 2010, HCTA sent a letter to the Trust, notifying it that assessments were delinquent in the amount of $3,864.96. Receiving no response to the letter, HCTA's board of directors adopted a resolution to record a lien against the Trust's separate interest for the delinquent assessments. A lien in the amount of $4,827.81 was recorded on January 7, 2011. Of that amount, $4,136 was for unpaid assessments and the rest was for late charges, interest, collection costs, and a returned check fee.

Four days after the lien was recorded, HCTA sent a notice to the Trust that the matter would be forwarded to legal counsel if the entire balance of the account was not paid within 30 days. On January 25, 2011, HCTA's board of directors adopted a resolution to foreclose the delinquent assessment lien. Two months later, HCTA's attorneys, Feldsott & Lee (Feldsott), sent a letter to the Trust, notifying it of HCTA's

---

[1] "'Association' means a nonprofit corporation or unincorporated association created for the purpose of managing a common interest development." (Civ. Code, § 4080.)

3

intent to initiate foreclosure proceedings. The letter stated the total amount of delinquency was $6,197.11, of which $5,434.11 was for delinquent assessments and the rest was for attorney fees, costs, release of lien fee, and "file set up" fees.

On April 13, 2011, HCTA filed a limited jurisdiction complaint against the Trust and Miner, as trustee, asserting causes of action for account stated (first cause of action), open book account (second cause of action), and foreclosure of assessment lien (third cause of action). (Later, an amendment to the complaint named Miner as a defendant in his individual capacity.) Soon after the complaint was filed, Miner requested and received from Feldsott an itemized statement of the sums due for delinquent assessments and other fees. According to the itemized statement, the total due as of May 2, 2011 was $8,012.58, of which $5,923.58 was for delinquent assessments through May 31, 2011.

On May 6, 2011, Miner sent an e-mail to HCTA, proposing a payment plan under which the Trust would make monthly payments of $1,500 to $2,000. He sent a $2,000 check to HCTA, which accepted it. Feldsott drafted a payment plan agreement calling for an initial payment of $2,000 followed by monthly payments of $1,500. The agreement was sent to the Trust, but Miner never signed it. The Trust thereafter made two payments totaling $1,500.

On October 17, 2011, Feldsott notified Miner that the Trust had failed to make the September and October payments under the payment plan agreement and failure to make those payments or reinstate the plan within 10 days would lead to its cancellation.

On several occasions, Miner requested a line-item accounting from the HCTA. On November 15 and December 12, 2011, Miner tendered the regular monthly assessments of $188. On December 16, Feldsott returned the checks on the ground it was "unable to accept partial payments." Three days later, Feldsott provided Miner a

4

statement of delinquent assessments and fees, according to which the total due was $6,418.47.

Miner mailed a cashier's check for $3,500, dated December 29, 2011, to the home address of the HCTA president. On January 3, 2012, the HCTA president told Miner he would have Feldsott apply the $3,500 payment to the Trust's account and have the HCTA provide the Trust with an updated accounting. In a letter dated January 5, 2012, Feldsott informed Miner the $3,500 check was being returned because "[o]ur office is unable to accept partial payments without first establishing a payment plan approved by the Board of Directors." This letter included an account statement reflecting a total of $9,226.13 in charges, $3,568 in payments (not including the returned check for $3,500), and a balance of $5,658.13. On February 15, 2012, Feldsott sent a new account statement showing a total due of $6,837.68.

After a bench trial, the trial court found the Trust owed HCTA $5,715.39 as of September 2012, and HCTA had complied with the relevant statutory requirements to foreclose its lien. The judgment awarded HCTA damages of $5,715.93 on the first and second causes of action and ordered foreclosure of its lien under the third cause of action. The Trust and Miner timely filed a notice of appeal.

The superior court appellate division, in a unanimous opinion authored by Judge Griffin, reversed the judgment as to the third cause of action and reversed and remanded as to the first and second causes of action. (*Huntington Continental*, *supra*, 222 Cal.App.4th at pp. Supp. 17, 18.) The appellate division concluded the Davis-Stirling Act compelled HCTA to accept the $3,500 check even though it constituted a partial payment of the total amount owed on the account. (*Huntington Continental*, *supra*, at pp. Supp. 15, 17.) Under the Davis-Stirling Act, an association may not seek to collect through judicial or nonjudicial foreclosure delinquent assessments in an amount less than $1,800. (Civ. Code, § 5720, subd. (b) (section 5720(b)).) If HCTA had accepted the $3,500 check when tendered in December 2011, the total amount of

unpaid assessments would have been less than $1,800. Therefore, the appellate division held HCTA could not pursue foreclosure of the assessment lien. (*Huntington Continental*, *supra*, at p. Supp. 17.)

At trial, HCTA's counsel had conceded that "had that $3500 payment been applied to the account, the remaining balance would have been $760 and change." Based on exhibits presented at trial, the appellate division of the superior court prepared an accounting of assessments only. (*Huntington Continental*, *supra*, 222 Cal.App.4th at p. Supp. 16, fn. 1.) According to that accounting, attached as an appendix to the appellate division's opinion, as of December 1, 2011, the total amount of unpaid assessments was $2,704 and as of September 1, 2012, the total amount of unpaid assessments was $4,441. (*Id.* at pp. Supp. 19, 20.) Feldsott's statement of account, dated December 19, 2011, showed total delinquent assessments of $7,264.57 and payment of $3,000 from funds held in trust.

DISCUSSION

I.

**Standard of Review and**
**Principles of Statutory Interpretation**

General standards of appellate review apply to appeals transferred from the superior court appellate division for decision in the Court of Appeal. (*People v. Disandro* (2010) 186 Cal.App.4th 593, 599.) In resolving the issue certified to this court by the superior court, we must interpret provisions of the Davis-Stirling Act. We review issues of statutory interpretation de novo. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916.)

The fundamental task of statutory interpretation is to ascertain the Legislature's intent to effectuate the statute's purpose. (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.) In ascertaining the Legislature's intent, we first consider the language of the statute itself, giving the words used their ordinary meaning. (*Ibid.*) The statutory

6

language must be construed in the context of the statute as a whole and the overall statutory scheme, giving significance to every word, phrase, sentence, and part of the statute. (*Ibid.*)

If the statutory language is unambiguous, the plain meaning controls and consideration of extrinsic sources to determine the Legislature's intent is unnecessary. (*Kavanaugh v. West Sonoma County Union High School Dist.*, *supra*, 29 Cal.4th at p. 919.) "When the words are susceptible to more than one reasonable interpretation, we consider a variety of extrinsic aids, including the statutory context and the circumstances of the statute's enactment, in determining legislative intent." (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 582.) We read the statute as a whole to harmonize and give effect to all parts. (*Ste. Marie v. Riverside County Regional Park & Open-Space Dist.* (2009) 46 Cal.4th 282, 289.)

## II.

### Relevant Provisions of the Davis-Stirling Act

The Davis-Stirling Act is codified as part 5 of division 4 of the Civil Code. Articles 1, 2, and 3 of chapter 8 of part 5 of division 4 of the Civil Code (Civ. Code, §§ 5650-5740) set forth comprehensive rules, restrictions, and procedures for imposing, paying, collecting, and enforcing regular and special assessments.

The Davis-Stirling Act requires an association to levy regular and special assessments "sufficient to perform its obligations under the governing documents and this act." (Civ. Code, § 5600, subd. (a).) Article 2 of chapter 8 of part 5 of division 4 of the Civil Code addresses payment and delinquency in payment of assessments. Civil Code section 5650, subdivision (a) (section 5650(a)) states: "A regular or special assessment and any late charges, reasonable fees and costs of collection, reasonable attorney's fees, if any, and interest, if any, as determined in accordance with subdivision (b), shall be a debt of the owner of the separate interest at the time the assessment or other sums are levied."

Civil Code section 5655 addresses allocation of payments against the debt. Section 5655(a) states: "Any payments made by the owner of a separate interest toward a debt described in subdivision (a) of Section 5650 *shall* first be applied to the assessments owed, and, only after the assessments owed are paid in full shall the payments be applied to the fees and costs of collection, attorney's fees, late charges, or interest." (Italics added.) This section does not state an association has the discretion to decline to follow the procedure set forth in the statute.

Under Civil Code section 5675, the amount of the assessment, "plus any costs of collection, late charges, and interest assessed in accordance with subdivision (b) of Section 5650," becomes a lien on the owner of record's separate interest in the common interest development once the association causes to be recorded a notice of delinquent assessment setting forth certain required information (Civ. Code, § 5675, subd. (a)), together with an itemized statement of charges (*id.*, § 5675, subd. (b)). The board of an association may, by majority vote in an open meeting, decide to record a lien for delinquent assessments. (*Id.*, § 5673.)

Before recording the lien, an association must provide the owner of record notice that includes the information set forth in subdivisions (a) through (f) of Civil Code section 5660, including the right to request a meeting with the board to request a payment plan under Civil Code section 5665. (Civ. Code, § 5660.) Payment plans do not impede an association's ability to record a lien on the owner's separate interest (*id.*, § 5665, subd. (d)), and, "[i]n the event of a default on any payment plan, the association may resume its efforts to collect the delinquent assessments from the time prior to entering into the payment plan" (*id.*, § 5665, subd. (e)).

If an association and an owner of a separate interest dispute the validity of a charge or sum levied by the association, the owner may pay the disputed amount, including collection costs, and, in addition to pursuing alternative dispute resolution, may

commence a small claims action to recoup the disputed amount paid.  (Civ. Code, § 5658, subd. (a).)

Article 3 of chapter 8 of part 5 of division 4 of the Civil Code concerns collection of assessments and enforcement of liens.  Under Civil Code section 5700, subdivision (a), a lien created by Civil Code section 5675 may be enforced "in any manner permitted by law," including judicial or nonjudicial foreclosure, after the expiration of 30 days following the recordation of the lien.  (Civ. Code, § 5700, subd. (a).)  The decision to initiate foreclosure of a lien for delinquent assessments must be made by a majority vote of the board of directors of an association in an executive session (*id.*, § 5705, subd. (c)), and must be preceded by an offer to the owner to participate in dispute resolution (*id.*, § 5705, subd. (b)).

In the event an association's board decides to pursue nonjudicial foreclosure, "[a]ny sale by the trustee shall be conducted in accordance with Sections 2924, 2924b, and 2924c applicable to the exercise of powers of sale in mortgages and deeds of trust."  (Civ. Code, § 5710, subd. (a).)

Particularly significant to this case is Civil Code section 5720, which places limits on foreclosure.  Relevant parts of section 5720(b) state:  "An association that seeks to collect delinquent regular or special assessments of an amount less than one thousand eight hundred dollars ($1,800), not including any accelerated assessments, late charges, fees and costs of collection, attorney's fees, or interest, may not collect that debt through judicial or nonjudicial foreclosure, but may attempt to collect or secure that debt in any of the following ways . . . ."

Section 5720(b) identifies three ways to collect or secure delinquent assessments in an amount less than $1,800.  The first is "a civil action in small claims court . . . ."  (§ 5720(b)(1).)  The second is "[b]y recording a lien on the owner's separate interest upon which the association may not foreclose until the amount of the delinquent assessments secured by the lien, exclusive of any accelerated assessments, late charges,

9

fees and costs of collection, attorney's fees, or interest, equals or exceeds one thousand eight hundred dollars ($1,800) or the assessments secured by the lien are more than 12 months delinquent." (§ 5720(b)(2).) The third is "[a]ny other manner provided by law, except for judicial or nonjudicial foreclosure." (§ 5720(b)(3).)

The limitation on foreclosure of assessment liens for amounts under $1,800 does not apply to "[a]ssessments secured by a lien that are more than 12 months delinquent." (Civ. Code, § 5720, subd. (c)(1).) (HCTA does not contend the assessments secured by its lien were more than 12 months delinquent at the time the Trust tendered the $3,500 check.)

## III.

### An Association Must Accept a Partial Payment Made by an Owner of a Separate Interest After a Lien Has Been Recorded.

Two statutes within the Davis-Stirling Act, section 5655(a) and Civil Code section 5720, are the focus of our analysis and central to our holding an association must accept a partial payment. Another, Civil Code section 5710, also warrants additional discussion.

A. *Section 5655(a)*

Section 5655(a) states: "Any payments made by the owner of a separate interest toward a debt described in subdivision (a) of Section 5650 shall first be applied to the assessments owed, and, only after the assessments owed are paid in full shall the payments be applied to the fees and costs of collection, attorney's fees, late charges, or interest." Two issues arise in interpreting section 5655(a). First, does it permit an owner to make a partial payment, that is, a payment which does not cover the owner's entire debt under section 5650(a)? Second, does section 5655(a) require an association to accept a partial payment?

10

On the first issue, the plain language of section 5655(a) unambiguously permits partial payments. The Davis-Stirling Act permits an association to impose late charges, reasonable fees and costs of collection, reasonable attorney fees, if any, and interest on delinquent assessments. (§ 5650(a).) By creating an order of allocation, section 5655(a), in effect, recognizes a payment might not cover the full amount of the delinquency and other charges.

On the second issue, the plain language of section 5655(a) requires an association to accept an owner's partial payment. Section 5655(a) does not refer to any payment made by the owner *and accepted by an association*. Instead, section 5655(a) states, "[a]ny payments made by the owner" toward a debt described in section 5650(a) "*shall*" (italics added) be applied in the order set forth. Use of the word "shall" connotes a mandatory act. "Under 'well-settled principle[s] of statutory construction,' we 'ordinarily' construe the word 'may' as permissive and the word 'shall' as mandatory, 'particularly' when a single statute uses both terms." (*Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542.) In *Diamond v. Superior Court* (2013) 217 Cal.App.4th 1172, 1189-1190, the court concluded the word "shall" in the Davis-Stirling Act, Civil Code former section 1367.1, subdivision (d), created a mandatory obligation to serve an owner of a separate interest with notice of delinquent assessment. Under the statutory language of section 5655(a), if an owner of a separate interest makes any payment, the association cannot reject it, but is required to ("shall") apply that payment to the debt in the statutory order of allocation. Quite simply, an association does not have the discretion to refuse to follow the statute's mandate.

Nothing in the Davis-Stirling Act provides that the rights and duties under section 5655(a) end when an association takes action to record a lien. Although section 5655(a) is in article 2 of chapter 8 of part 5 of division 4 of the Civil Code, entitled "Assessment Payment and Delinquency," and not in article 3, entitled "Assessment Collection," the headings in the Davis-Stirling Act "do not in any manner

11

affect the scope, meaning, or intent of this act" (Civ. Code, § 4005). In the order of allocation, section 5655(a) includes "costs of collection" and "attorney fees," thereby recognizing an owner can make a partial payment after an association has commenced measures, such as recording a lien, to collect the delinquency.

HCTA argues partial payments under section 5655(a) are permitted only when made pursuant to a payment plan under Civil Code section 5665. By its terms, section 5655(a) is not limited to payments made pursuant to a payment plan. To the contrary, section 5655(a) refers to payments "toward a debt described in subdivision (a) of Section 5650," which describes a debt as "[a] regular or special assessment and any late charges, reasonable fees and costs of collection, reasonable attorney's fees, if any, and interest, if any" (§ 5650(a)). In a similar vein, HCTA asserts, "[i]f an association were required to accept partial payments at the whim of a delinquent homeowner, then there would be no reason for the [Davis-Stirling] Act to include various provisions relating to payment plans." There are very good reasons for payment plans under section 5665(a), notwithstanding an association's obligation to accept partial payments. To the owner of a separate interest, a payment plan might reduce the monthly assessment obligation to an affordable amount, thereby avoiding further delinquency, reducing or eliminating late fees, and preventing the amount secured by the lien from increasing. To an association, the payment plan provides an income stream without having to undertake collection procedures.

HCTA argues that permitting partial payments under section 5655(a) would be inconsistent with Civil Code section 5658, subdivision (a), which provides, "[i]f a dispute exists between the owner of a separate interest and the association regarding any disputed charge or sum levied by the association . . . , the owner of the separate interest may, in addition to pursuing dispute resolution . . . , pay under protest the disputed amount and all other amounts levied . . . , and commence an action in small claims court." If the owner disputes a charge, HCTA asserts, "[t]he remedy is to pay all

12

amounts in full, under protest, and to file a small claims suit or otherwise pursue resolution of the disputed sums." Section 5658, subdivision (a) applies only when an owner disputes the validity or amount of a charge or sum, which is different from just not paying it. The Trust is not disputing any of the assessments or fees and, by not invoking the procedure of section 5658, subdivision (a), has forfeited any such claim. In other words, the Trust is not disputing it owes the assessments levied, but contends its tender of $3,500 reduced the balance of assessments owed to an amount lower than the threshold for HCTA to foreclose its lien.

B. *Section 5720(b)*

Section 5720(b) prohibits an association from foreclosing a lien when the amount of delinquent assessments alone is less than $1,800. In this case, if HCTA had accepted the Trust's check for $3,500, then the amount of delinquent assessments would have been less than $1,800 and, under section 5720(b), HCTA would not have been able to pursue foreclosure to collect the debt.

Civil code section 5720 was added by statute in 2005 as Civil Code former section 1367.4. (*Diamond v. Superior Court*, *supra*, 217 Cal.App.4th at p. 1190.) The purpose of former section 1367.4 was to protect the interest of an owner who has failed to timely pay an assessment levied by an association. (*Diamond v. Superior Court*, *supra*, at pp. 1190-1191.) "In 2005, the Senate Judiciary Committee's bill analysis stated: 'This bill protects owners' equity in their homes when they fail to pay relatively small assessments to their common interest development associations.'" (*Id*. at p. 1190.) "The Assembly Committee on Judiciary similarly stated: 'This bill goes to the heart of home owner rights, touching upon the key issue of when, if ever, a homeowners' association should have the right to force the sale of a member's home when the home owner falls behind on paying overdue assessments or dues. . . . [¶] . . . [This bill] [s]eeks to protect a condominium owner's property and equity when he or she misses payment on relatively

13

small assessments imposed by their common interest development . . . association.'"
(*Ibid.*)

Requiring an association to accept a partial payment reducing the amount of delinquent assessments to less than $1,800 is consistent with this stated legislative policy of protecting owners from losing their home equity over small amounts of delinquent assessments. Permitting an association to reject a partial payment could lead to the very situation the Legislature sought to avoid: foreclosure and loss of the owner's equity in the home when the owner is delinquent in paying assessments in an amount under $1,800.

We disagree with the assertion made by HCTA and the amici curiae appearing on its behalf that requiring an association to accept partial payments will "seriously impede" an association's ability to collect assessments. We recognize assessments are both necessary to the functioning of an association and required by the Davis-Stirling Act to be in an amount sufficient to perform an association's obligations under the governing documents and the Davis-Stirling Act. (Civ. Code, § 5600, subd. (a); see *Park Place Estates Homeowners Assn. v. Naber* (1994) 29 Cal.App.4th 427, 431-432 [associations "*must* assess fees on the individual owners in order to maintain the complexes"].)

An association has remedies, however, when the amount of delinquent assessments falls below $1,800. Section 5720(b) identifies three ways to collect or secure delinquent assessments in an amount less than $1,800 as well as to collect additional fees, collection costs, and interest: (1) "a civil action in small claims court . . . ."; (2) "recording a lien on the owner's separate interest . . . ."; and (3) "[a]ny other manner provided by law, except for judicial or nonjudicial foreclosure." (§ 5720(b)(1), (2) & (3).) Thus, in the situation presented by this case, an association would be able to maintain a lien on the owner's separate interest and could pursue a small claims action to recover the debt. Although the lien could not be foreclosed until the conditions of

14

section 5720(b)(2) had been met, the lien itself is a powerful coercion mechanism; for instance, the lien would have to be satisfied to permit the sale of the home. Further, an association may foreclose a lien securing assessments in any amount that are more than 12 months delinquent. (Civ. Code, § 5720, subd. (c)(1).)

HCTA and the amici curiae appearing on its behalf assert that requiring an association to accept partial payments bringing the amount of delinquent assessments to less than $1,800 would permit delinquent owners to abuse the system by accepting the benefits of living in a common interest development at the expense of the other owners. It is possible for a situation to arise in which a clever and unscrupulous owner would be able to dodge foreclosure of a lien by making partial payments designed to bring the delinquent assessments under $1,800 in amount and less than 12 months in age. As we read the Davis-Stirling Act, the Legislature engaged in a balancing process and chose to accept that risk in order to protect owners from foreclosure and the loss of equity in their homes when the delinquent assessments are under $1,800 or less than 12 months delinquent. And, as we have explained, section 5720(b) grants an association various remedies to collect the debt.

C. *Civil Code Section 5710*

In the event the board of an association decides to pursue nonjudicial foreclosure, "[a]ny sale by the trustee shall be conducted in accordance with Sections 2924, 2924b, and 2924c applicable to the exercise of powers of sale in mortgages and deeds of trust." (Civ. Code, § 5710, subd. (a).) Under Civil Code section 2924c, subdivision (a)(1), the trustor or mortgagor may reinstate a loan once foreclosure proceedings have begun by paying the entire amount due—including principal, interest, taxes, assessments, and costs incurred in enforcing the obligation—at any time before entry of the decree of foreclosure.

HCTA argues, based on Civil Code section 5710, subdivision (a), that Civil Code section 2924c, subdivision (a)(1) applies to nonjudicial assessment lien

15

foreclosures, requires payment in full to forestall foreclosure, and permits an association to decline partial payments after foreclosure has been initiated. Further, HCTA argues, an association's right to decline partial payments must extend to judicial foreclosures, otherwise, as an unintended consequence, "[a]ssociations wishing to recover the fees and costs incurred in foreclosure would turn to private sale, which would undermine the objectives of the [Davis-Stirling] Act as well as the public interest served by promoting judicial foreclosures."

Civil Code section 5710, subdivision (a) states, in plain language, that "[a]ny sale *by the trustee*" (italics added) shall be conducted in accordance with the Civil Code sections applicable to the exercise of powers of sale in mortgages and deed of trust. In this case, HCTA pursued judicial foreclosure. The unintended consequence foretold by HCTA suggests not that the Legislature intended for an association to be able to decline partial payments. Instead, the Legislature intended for section 5655(a), requiring an association to accept partial payments, and section 5720(b), limiting foreclosure, to apply to both judicial and nonjudicial foreclosure and to prevail to the extent of any conflict with Civil Code section 2924c, subdivision (a)(1).

D. *Policy Arguments*

The parties and, in particular, the amici curiae raise policy considerations that are not based on statutory language. HCTA and the amici curiae appearing on its behalf assert the Trust is not a struggling homeowner but owns the home as an investment, and Miner made a calculated decision not to pay assessments. Amici curiae AARP, Housing and Economic Rights Advocates, and National Housing Law Project argue that "use of foreclosure as an enforcement tool on those having difficulty paying homeowner assessments can be both unjust and extremely damaging" and "[t]he consequences of foreclosure are particularly severe for older homeowners."

The code sections of the Davis-Stirling Act dealing with assessment payments, delinquency, and assessment collection (Civ. Code, §§ 5650-5740) use the

16

word "owner" or the term "owner of a separate interest" and do not distinguish between owners who occupy their separate interests and owners who do not. Nor do those code sections make any distinctions in treatment based on an owner's age or wealth. Foreclosure of a lien is recognized by the Davis-Stirling Act as a legitimate means by which an association may seek to collect delinquent assessments, fees, charges, collection costs, and interest. The issues presented to us are a matter of statutory interpretation, and our task has been only to discern the Legislature's intent through application of accepted principles of statutory construction.

## IV.

### Conclusion

After considering the language of section 5655(a) and its context within the Davis-Stirling Act, we conclude an association must accept a partial payment made by an owner of a separate interest in a common interest development toward a debt described in section 5650(a) and must apply that payment first to assessments owed. That requirement continues after recordation of a lien pursuant to Civil Code sections 5673 and 5675.

Accordingly, in this case, HCTA was required to accept the Trust's check for $3,500 when tendered in December 2011. Had HCTA accepted the check and applied it in the order prescribed by section 5655(a), the amount of delinquent assessments would have been less than $1,800. HCTA does not contend the assessments secured by its lien were more than 12 months delinquent at the time the Trust tendered the $3,500 check. Thus, under section 5720(b), HCTA could not pursue judicial foreclosure of the lien, and the trial court erred by issuing a decree of foreclosure.

The superior court appellate division's opinion also addressed the sufficiency of the evidence to support the damages awarded under the first and second causes of action. (*Huntington Continental*, *supra*, 222 Cal.App.4th at p. Supp. 17.) The matter was not certified and transferred to this court to address that issue and, therefore,

17

we decline to do so, and decline to address any other issues raised in the appellate briefs. (See Cal. Rules of Court, rule 8.1012(e).)


## DISPOSITION

The judgment of the trial court is reversed as to the third cause of action and the matter is remanded with directions to enter judgment on that cause of action in favor of appellant.  The judgment of the trial court as to the first and second causes of action is reversed and the matter is remanded in accordance with the judgment of the appellate division of the superior court.  Appellant shall recover costs incurred on appeal.



FYBEL, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.

18