Filed 4/27/23  Z.S. v. H.H. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| Z.S.,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>H.H.,<br><br>    Defendant and Appellant. | C094845, C094848<br><br>(Super. Ct. Nos. 34-2020-70008378-CU-HR-GDS, 34-2021-70008678-CU-HR-GDS) |
| S.S.,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>H.H.,<br><br>    Defendant and Appellant. | C094846, C094847<br><br>(Super. Ct. Nos. 34-2020-70008379-CU-HR-GDS, 34-2021-70008671-CU-HR-GDS) |

Z.S. and S.S. obtained four civil harassment restraining orders against H.H. pursuant to Code of Civil Procedure section 527.6.[1]  H.H. appeals the issuance of all four orders,[2] arguing (1) the trial court erred in denying her request for a statement of decision, (2) there was insufficient evidence to support the issuance of the orders, (3) the orders constitute an unconstitutional prior restraint on speech, and (4) she proved Z.S. and S.S. lied in another case and the trial court thus should have disregarded their testimony in this case.  We disagree with all four arguments, and we thus affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Z.S. and S.S. are a married couple, and H.H. is a former friend of theirs.  All three parties are originally from Iran, and currently live in Folsom.  Following a hearing, Z.S. and S.S. obtained four separate civil harassment restraining orders against H.H., in four separate cases.  Because we do not have a reporter's transcript or an agreed or settled statement of the hearing, the facts below come entirely from the clerk's transcript, which consists of the requests for civil harassment restraining orders and various documents filed in support of and opposition thereto, and the trial court's orders and rulings thereon.

*December 2020 Requests for Civil Harassment Restraining Orders*

On December 4, 2020, Z.S. and S.S. filed separate (but seemingly identical) requests for civil harassment restraining orders against H.H.[3]  In support of the requests, they stated they had previously obtained temporary civil harassment restraining orders against the Rostami family, and they attached copies of those restraining orders to the current requests.  They also stated:  "Last night, we figured it out that [H.H.] has

---

[1]  Undesignated statutory references are to the Code of Civil Procedure.

[2]  We issued an order consolidating the cases for appellate purposes, but also ordering they would retain their respective case numbers.

[3]  Z.S. filed case No. 34-2020-70008378, and S.S. filed case No. 34-2020-70008379.

2

provoked Rostami family to threaten to kill us with gun and knife. . . . Last night Rostami family have broken restraining order principles for the third time, when police came here, Rostami family called to [H.H.] while police officer was on the other phone with cousin of Rostami for translation. We could hear [H.H.'s] voice that was on speaker and she was advising Rostami family to deny that he came to the window with knife and threatening us. [H.H.] also told Rostam [Rostami] that hide the knife and change his clothes that he had when he came to the window. They were talking in Farsi and Officer was on the other phone with Rostami family and didn't hear their conversation but we told the officer regarding their conversation, and fortunately we record our voice while we mentioned police to this conversation. We also have 4 witnesses that [H.H.] accused us in front of them to discredit us, because she had some illegal and unethical requests from us and we rejected her and cut our communication with her, we ignored her accusation till last night that we figured it out that [H.H.] provoked Rostami family against us."

On January 12, 2021, Z.S. and S.S. filed a declaration providing additional information about their requests. They stated H.H. was a former friend, but the friendship had broken down due to a series of incidents they described as "shameful." They stated that when S.S. was waiting for Z.S.'s immigration visa, H.H. told her that she should divorce Z.S. and marry someone who needed a green card and would pay her money. They also stated H.H. told Z.S. she wanted to be his girlfriend, and they could keep the relationship quiet. Finally, they stated H.H. paid $165 for Z.S.'s green card fee but charged Z.S. $16,500. As a result of these incidents, Z.S. and S.S. stated they cut communications with H.H. in May 2016, and "[s]ince that time she started accusations to us in Iranian community to discredit us." The Iranian community, however, did not believe H.H., they reported H.H.'s accusations to Z.S. and S.S., and the community cut off communications with H.H., "and we think this situation led to [H.H.] become overwhelmed and provoked Rostami family to threaten to kill us."

3

Although Z.S. and S.S. asked the court to issue temporary restraining orders pending the hearing on the requests, no temporary orders were issued. A hearing on the requests was scheduled for March 19, 2021, and was later continued to May 21, 2021.

*February 2021 Requests for Civil Harassment Restraining Orders*

In the meantime, on February 24, 2021, Z.S. and S.S. filed separate (but seemingly identical) requests for civil harassment restraining orders against H.H.[4] The requests include a seven-page attachment describing the harassment. The attachment provided more detail about the restraining orders that Z.S. and S.S. obtained against the Rostamis, and largely repeats what they stated in their first requests about having recently figured out that H.H. "provoked Rostami family to kill us with gun and knife."

Z.S. and S.S. also described another series of incidents that "proves that [H.H.] has made her decision to kill both [of] us." On February 12, 2021, while Z.S. and S.S. were out shopping, they received a phone call from a neighbor who reported that Rostam Rostami was "taking pictures/videos from several different angles of our apartment that lasts for at least 10 minutes." When questioned by the police, Rostami stated he was taking photos for an upcoming court case, which Z.S. and S.S. found "strange."

A little over a week later, Z.S. and S.S. received a phone call from Z.S.'s mother and sister, who live in Iran. Z.S.'s mother and sister stated they had received a package from a taxi driver that contained a letter and photos of Z.S. and S.S.'s apartment from different angles. The letter stated Z.S. and S.S. would soon "be killed inside their apartment to pay the penalty for their actions against the Holy system of the Islamic Republic of Iran. This is the punishment of those who first fight against the Holy system of the Islamic Republic abroad with their political articles and they make the Holy system of the Islamic Republic of Iran look like an oppressive and dark regime. Secondly, by

---

[4]     Z.S. filed case No. 34-2021-70008678, and S.S. filed case No. 34-2021-70008871.

4

changing their religion from Islam to Christianity, they took away the reputation of Islam and Muslims and according to the fatwa of the authorities and ayatollah and the Holy law of the Islamic Republic, their blood is permissible. With their liberal, freedom and free men's activities, they are trying to overthrow the Holy system of the Islamic Republic and question its values. The photos that come with this package show how close our agents are to them and, if necessary, we will get closer to them and soon we will punish them for their actions against the Holy system of the Islamic Republic of Iran and we will kill them in the worst possible way."[5] According to Z.S. and S.S., Z.S.'s mother asked the taxi driver who had given him the package, and he said he had received it from a man who instructed him to deliver it to Z.S.'s mother's apartment. This man also gave the taxi driver a phone number to call if he was unable to deliver the package. Z.S. and S.S. stated they entered the phone number in their smart phone, and "the image of the person who delivered the package to the taxi driver, came up in the applications. As soon as the photo related to the mentioned number came up in the WhatsApp and telegram applications we knew that he was [H.H.'s] cousin," because she had shown them photos of him several years ago. Z.S. and S.S. contended that the photos of their apartment in the package that was delivered to Z.S.'s mother and sister were the photos Rostami had taken the week before, and that Rostami sent those photos either to H.H. or to her cousin in order "to scare our family in Iran that it leads to force us to stop our freedom and liberal activities through the articles which we wrote against Regim[e] of Iran or maybe it is the punishment for changing our religion."

Once again, Z.S. and S.S. asked the court to issue temporary restraining orders pending the hearing. The trial court denied the requests.

---

[5] The letter was in Farsi, but Z.S. and S.S. translated it.

*H.H.'s Response to the Requests*

H.H. filed a response to all four requests on April 20, 2021, stating she had done nothing to Z.S. or S.S. that would justify imposing restraining orders against her. She stated she had not had any contact with either Z.S. or S.S. since March 2016, and she noted Z.S. and S.S. acknowledged this in their requests when they stated they had cut off communications with her in May 2016. She described her "history" with Z.S. and S.S., because she believed it showed they had "great animus" against her. She stated she met S.S. in 2013 in the United States. At that time, Z.S. was still in Iran and S.S. was trying to bring him to the United States. H.H. agreed to sponsor Z.S., and in 2014 she submitted forms to the United States Citizenship and Immigration Service (USCIS) for that purpose. In late 2015, however, S.S.'s brother and sister-in-law informed H.H. that Z.S. had committed financial crimes in Iran and gave her the names of his victims, and the victims sent H.H. evidence of the crimes. After she received this evidence, she dropped her sponsorship of Z.S. and reported what she had learned to USCIS, and she believes Z.S. and S.S. became hostile and malicious towards her "as evidenced by the falsehoods that they had told about me in their court papers." She denied she had ever provoked the Rostamis to kill Z.S. and S.S., and she stated, "Their allegations that I am somehow involved in a plot with the Iranian Government to assassinate [them] (supposedly in their own apartment!) is so fantastic and unbelievable that it is difficult for me to respond." Difficult or not, she stated "unequivocally that I am not in a plot with anybody, much less the Iranian Government, to assassinate [Z.S. or S.S.]."

*The Hearing and the Challenged Orders*

The hearing on all four requests was held on May 21, 2021, and at the conclusion of the hearing, the trial court took the matter under submission. According to a posttrial brief filed by H.H., it appears that all three parties testified at the hearing, although it not clear whether other witnesses testified. Unfortunately, no court reporter was present and there is thus no reporter's transcript of the hearing.

6

On July 1, 2021, the court granted the requests and issued four civil harassment restraining orders after hearing utilizing the Judicial Council form created for that purpose (Judicial Council Forms, form CH-130).

On July 19, 2021, H.H. filed a request for a statement of decision pursuant to section 632 and asked the court to state what specific conduct on her part justified granting the restraining orders. The court denied the request, finding, in full: "The court is not required to prepare a statement of decision or make specific findings on the record for a Code of Civil Procedure section 527.6 civil harassment proceeding. [¶] All testimony and documentary evidence was considered. The parties and witnesses testified regarding their declarations and exhibits, which are in the record and available for review if an appeal is filed."

This appeal followed.

## DISCUSSION

### I

*Sufficiency of the Evidence to Support the Orders*

We begin with H.H.'s second argument: that the evidence was insufficient to support the issuance of the civil harassment restraining orders. She fails to overcome the presumption that the trial court's orders were correct.

*A.     Standard of review*

"We review issuance of a protective order for abuse of discretion, and the factual findings necessary to support the protective order are reviewed for substantial evidence. [Citations.] 'We resolve all conflicts in the evidence in favor of . . . the prevailing party, and indulge all legitimate and reasonable inferences in favor of upholding the trial court's findings. [Citation.] Declarations favoring the prevailing party's contentions are deemed to establish the facts stated in the declarations, as well as all facts which may reasonably be inferred from the declarations; if there is a substantial conflict in the facts included in the competing declarations, the trial court's determination of the controverted facts will

7

not be disturbed on appeal.' [Citation.]" (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1226.) "The appropriate test on appeal is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record. [Citation.] But whether the facts, when construed most favorably in [the petitioner's] favor, are legally sufficient to constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of law subject to de novo review." (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188, fn. omitted.)

  *B.  Section 527.6*

  "Section 527.6 of the Code of Civil Procedure was enacted 'to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution.' (Stats. 1978, ch. 1307, § 1; Cal. Const., art. I, § 1.) The purpose of the statute was to provide expedited injunctive relief to victims of 'harassment.' " (*Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 729-730.) " 'Harassment' " is defined as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).) " 'Course of conduct' " is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email. Constitutionally protected activity is not included within the meaning of 'course of conduct.' " (§ 527.6, subd. (b)(1).) A person who has suffered harassment as defined by section 527.6 may seek an order after hearing prohibiting

8

harassment.[6]  (§ 527.6, subd. (a).)  "At the hearing, the judge shall receive testimony that is relevant, and may make an independent inquiry.  If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment."  (§ 527.6, subd. (i).)  An order prohibiting harassment may last up to five years, but if no expiration date is stated on the face of the order (as in this case), it lasts for three years.  (§ 527.6, subd. (j).)

    *C.*    *Analysis*

H.H. argues the trial court erred in granting the challenged orders because there is not substantial evidence that she committed harassment as defined by section 527.6.  The problem with this argument is that H.H. has not provided us with a record of the May 21 hearing on the requests for the challenged orders, and in the absence of such a record, we have no alternative but to fall back on the presumption that the superior court's orders are correct.  (See *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 ["A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness"].)

Rule 8.120 of the California Rules of Court provides:  "If an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include a record of these oral proceedings in the form of one of the following:  [¶]  (1) A reporter's transcript under rule 8.130;  [¶]  (2) An agreed statement under rule 8.134; or  [¶]  (3) A settled statement under rule 8.137."  (Cal. Rules of Court, rule 8.120(b).)  Here, no reporter's transcript exists because there was no court reporter present at the May 21 hearing, and H.H. has not provided us with either an agreed statement or a settled statement.  This appeal is thus based solely on the clerk's transcript.  "Although in certain instances a reporter's transcript may not be necessary,

---

[6]  A person may also seek a temporary restraining order pending the hearing, but, as noted above, no temporary orders were issued in this case.

. . . [citation] on issues such as the instant one involving the abuse of discretion standard of review, a reporter's transcript or an agreed or settled statement of the proceedings is indispensable." (*Hood v. Gonzales* (2019) 43 Cal.App.5th 57, 79.) "The absence of a record concerning what actually occurred at the trial precludes a determination that the trial court abused its discretion." (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 448.) "It is axiomatic in appellate review that a judgment of a lower court is presumed correct. [Citations.] This presumption has special significance when, as in the present case, the appeal is based upon the clerk's transcript. 'It is elementary and fundamental that on a clerk's transcript appeal the appellate court must conclusively presume that the evidence is ample to sustain the findings.' " (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.) " ' "A judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. . . ." ' [Citations.] 'A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) "[A]n appellant has the burden of producing a record affirmatively showing error [citation] and if any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." (*Riley v. Dunbar* (1942) 55 Cal.App.2d 452, 455.) Accordingly, if no record of the hearing is furnished, "we must presume that the evidence adduced there is sufficient to support the judgment." (*Diamond View Limited v. Herz* (1986) 180 Cal.App.3d 612, 615, fn. 2.)

These rules are dispositive in this case. With no record of what happened at the May 21 hearing, H.H. has failed to provide us with "any evidentiary basis whatever for attacking the trial court's rulings." (*National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 522.)

*No Statement of Decision was Required*

H.H. argues the trial court erred in denying her request for a statement of decision and in failing to identify what conduct on her part justified issuance of the restraining orders. We disagree.

Section 527.6 provides, "A temporary restraining order or order after hearing relating to civil harassment issued by a court pursuant to this section shall be issued on forms adopted by the Judicial Council." (§ 527.6, subd. (x)(2).) "Use of the word 'shall' connotes a mandatory act. 'Under "well-settled principle[s] of statutory construction," we "ordinarily" construe the word . . . "shall" as mandatory.' " (*Huntington Continental Townhouse Assn., Inc. v. Miner* (2014) 230 Cal.App.4th 590, 602.) The Judicial Council has adopted form CH-130 to be used for civil harassment restraining orders issued after hearing, and the trial court utilized that form in this case, as it was required to by section 527.6. H.H. cites no authority requiring a court to also issue a statement of decision if requested by a party.

We also note that, in *Ensworth v. Mullvain* (1990) 224 Cal.App.3d 1105, the court found section 527.6 does not require the trial court make specific findings of harassment, explaining, "Subdivision (d) [now subdivision (i)] of section 527.6 provides in part that, at a hearing on the petition for an injunction, 'the judge shall receive such testimony as is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an injunction shall issue prohibiting the harassment.' The statute does not require the court to make a specific finding on the record that harassment exists, nor does it require specific findings of the statutory elements of harassment as defined in subdivision (b). . . . [Citations.] . . . [¶] . . . [T]he statute does not require a statement of the court's findings of fact, and we have been presented with no other authority requiring such findings. We hold that the granting of the injunction itself necessarily implies that the trial court found that [the respondent]

knowingly and willfully engaged in a course of conduct that seriously alarmed, annoyed or harassed [the petitioner], and that [the petitioner] actually suffered substantial emotional distress.  No further express findings are required." (*Ensworth*, at p. 1112.) H.H. never mentions *Ensworth*, much less attempts to convince us it was wrongly decided.

The only authority H.H. cites to support her argument is section 632, which provides:  "The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial.  The request must be made within 10 days after the court announces a tentative decision *unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision*." (§ 632, italics added.)  Even if we assume for the sake of argument that section 632 may require a trial court to issue a statement of decision in a civil harassment case if a timely request is made, H.H.'s request was not timely.  The hearing or trial on the requests was held on May 21, 2021, and was thus concluded within one calendar day.  At the end of the hearing, the court took the matter under submission.  That means a request for a statement of decision had to be made prior to the end of the hearing.  H.H., however, did not request a statement of decision until July 19, and her request was thus untimely.

This case is similar to *Khan v. Medical Board* (1993) 12 Cal.App.4th 1834. There, a physician filed a petition for writ of mandate challenging a decision by the California Medical Board placing him on probation.  (*Id*. at pp. 1837-1838.)  A hearing on the petition was concluded in one day.  After the trial court denied the petition, the physician requested a statement of decision, but the trial court denied the request because it was untimely.  (*Id*. at p. 1840.)  The physician appealed, and the appellate court affirmed, holding as follows:  "While . . . the failure to prepare a statement of decision which has been requested by a party is reversible error [citation], it is only error when

12

there is a timely request.  [Citation.]  Since appellant failed to comply with the statutory requirement by failing to request the statement of decision prior to the matter being submitted, he cannot claim the denial of the request was error." (*Ibid*.)  So, too, in this case.  H.H. failed to request a statement of decision in a timely manner, and she thus cannot claim the denial of the request was error.

## III

### *The Challenged Orders Are Not a Prior Restraint on Speech*

H.H. argues the challenged orders are an unconstitutional prior restraint on speech. We disagree.

A prior restraint is an order "that forbids certain speech in advance of the time the communication is to occur." (*San Jose Mercury News, Inc. v. Criminal Grand Jury* (2004) 122 Cal.App.4th 410, 416.)  "The California Constitution is more protective of free speech rights than the federal Constitution, and California courts require 'extraordinary circumstances' before a prior restraint may be imposed.  [Citations.] Nonetheless, in determining the validity of a prior restraint, California courts engage in an analysis of various factors similar to the federal constitutional analysis [citation], and injunctive relief restraining speech under the California Constitution may be permissible where the relief is necessary to ' "protect private rights" ' and further a 'sufficiently strong public policy.' " (*Molinaro v. Molinaro* (2019) 33 Cal.App.5th 824, 832.)  While we agree that prior restraints on speech are only justified in extraordinary circumstances, H.H. fails to convince us that the challenged orders constitute a prior restraint on speech.

H.H. argues the challenged orders constitute a prior restraint on speech because Z.S. and S.S. "clearly *requested* that the trial court restrain [her] free speech rights" by asking it to prohibit her from telling others or passing out documents about their financial crimes in Iran.  However, she fails to support this statement with a citation to the record showing that Z.S. and S.S. actually asked the trial court to prohibit her from telling others about their financial crimes in Iran, or, perhaps more importantly, that the trial court

13

issued an order prohibiting her from doing so.  " 'It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations.'  [Citations.]  If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived." (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)  With no citation to the record, we deem this argument to be waived.

Even if the argument were not waived, we would reject it because the challenged orders do not actually prohibit H.H. from telling others about Z.S.'s and S.S.'s alleged financial crimes.  Instead, the orders (which, as noted above, were issued on Judicial Council form CH-130) state H.H. "must not do the following things to" Z.S. and S.S.: "(1) Harass, intimidate, molest, attack, strike, stalk, threaten, assault (sexually or otherwise), hit, abuse, destroy personal property of, or disturb the peace of the person. [¶]  (2) Contact [Z.S. or S.S.], either directly or indirectly, in any way, including but not limited to, in person, by telephone, in writing, by public or private mail, by interoffice mail, by e-mail, by text message, by fax, or by other electronic means."  The trial court had the option of specifying other prohibited conduct on an attachment, but it did not do so.  On their face, the orders prohibit no speech, and thus do not constitute a prior restraint on speech.

IV

*Z.S.'s and S.S.'s Credibility*

H.H.'s final argument is that she proved Z.S. and S.S. lied in another case, which proved they were not credible witnesses, and the trial court thus should have afforded very little weight to their testimony in this case.  We disagree.

The alleged lie did not occur in this case.  Instead, it occurred in a different case involving requests for restraining orders that Z.S. and S.S. filed against Rostam Rostami

14

and Fariba Farinfar.[7]  In a posttrial brief that H.H. filed after the hearing in this case, she stated that Z.S. and S.S. had claimed in the other cases that, on October 17, 2020, Rostami tried to hit their car and threatened to kill them with a gun.  According to a police report attached to the posttrial brief, Z.S. and S.S. told the police that while they were driving into their apartment complex and Rostami was driving out, Rostami "swerved his car in the direction of our car like he was going to hit us" and "tried to run us off the road."  They also told the police Rostami pulled up next to their car, rolled the window down, and told them he was going to kill them with a gun.  H.H. filed a video with her posttrial brief, and she stated the video "conclusively and indisputably proves that what [Z.S. and S.S.] claimed to have happened simply did not occur. . . .  The video conclusively proves that there were no verbal threats at all made by Rostam Rostami or his wife about killing [Z.S. and S.S.] with a gun that they would borrow from a friend . . . [, and] proves that Rostam Rostami did not try to hit [Z.S. and S.S.] with his car."

We note that the incident depicted in the video is *not* one of the incidents on which the requests for restraining orders against H.H. are based.[8]  We also note that it is reasonably clear the video was not actually introduced into evidence or proffered at the hearing in this case, because H.H. states the following in her posttrial brief:  "Attached as Exhibit 1 to the Declaration of Cyrus Zal [H.H.'s counsel] submitted herewith is a video of the alleged incident in the parking lot . . . .  [H.H.'s] counsel had referenced this video in the Long Cause Hearing. . . .  [¶]  [H.H.] strongly urges and begs the Court to view this

---

**7**     There were four separate requests for restraining orders against Rostami and Farinfar:  case nos. 34-2020-70008185, 34-2020-70008188, 34-2020-70008189, and 34-2020-70008190.

**8**     The incident in the video occurred on October 17, 2020.  The first requests for restraining orders against H.H. are based on an incident that occurred on December 3, 2020, and the second requests are based on an incident (or incidents) that occurred in February 2021.

15

video." These statements strongly suggest the video was not introduced at the hearing and was first submitted with the posttrial brief. We also note there is nothing in the record that discloses whether or not the trial court viewed or considered this late-submitted video. We will not reverse a restraining order based on a video that was not introduced at the hearing in this case.

Moreover, and more importantly, even if the video had been introduced at the hearing, H.H. cites it solely to demonstrate Z.S. and S.S. were not credible in general because they lied in another case. On appeal in a case such as this, however, we do not consider the credibility of witnesses. (See *Doe v. Regents of University of California* (2016) 5 Cal.App.5th 1055, 1073 [" 'On substantial evidence review, we do not " . . . consider the credibility of witnesses . . ." ' "]; *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 334 [" 'questions as to the . . . the credibility of witnesses . . . are matters for the trial court to resolve' "].) "Venerable precedent holds that, in a bench trial, the trial court is the 'sole judge' of witness credibility. [Citation.] The trial judge may believe or disbelieve uncontradicted witnesses if there is any rational ground for doing so. [Citation.] The fact finder's determination of the veracity of a witness is final." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.) This is because "[f]act finders see and hear witnesses. The finder of the facts has a view appellate courts lack. That view is better." (*Ibid*.)

Particularly with no record of the hearing, we presume the evidence supports the trial court's express and implied findings, which would necessarily include a finding that Z.S. and S.S. were credible witnesses. (*Ehrler v. Ehrler, supra*, 126 Cal.App.3d at p. 154.)

16

## DISPOSITION

The civil harassment restraining orders are affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


$\qquad$ /s/ $\qquad$
EARL, J.


We concur:


$\qquad$ /s/ $\qquad$
ROBIE, Acting P. J.


$\qquad$ /s/ $\qquad$
MCADAM, J.*

---

\* Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.